**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1821-22

CHRISTINE ANN DEVERS,

    Plaintiff-Respondent,

v.

JEFFREY ERIC DEVERS,

    Defendant-Appellant.

_____

Argued June 3, 2024 – Decided July 1, 2024

Before Judges Gilson, DeAlmeida, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-1537-09.

Evan R. Weinstein argued the cause for appellant (Weinstein Family Law, attorneys; Evan R. Weinstein, of counsel and on the briefs; Erika P. Handler and Julianne Kallas, on the briefs).

Jeffrey S. Mandel argued the cause for respondent (Law Offices of Jeffrey S. Mandell LLC, attorneys; Jeffrey S. Mandel, of counsel and on the brief).

PER CURIAM

Defendant appeals from the family court's order of January 26, 2023, and amended order of January 31, holding that monies controlled by Gauss, LLC, (Gauss), a limited liability company of which defendant is the sole member, belong to plaintiff pursuant to the parties' marital settlement agreement (the MSA). He contends the documentary and testimonial evidence he proffered at an evidentiary hearing demonstrated the Gauss monies belong to "lost" investors who have not yet come forward to request reimbursement. According to defendant, this evidence demonstrated the monies do not belong to him, but to former third-party investors of hedge funds he managed in the early 2000s. He also claims plaintiff failed to meet her burden to establish the funds were marital property subject to equitable distribution.

Having reviewed the arguments of the parties in light of the applicable law, we affirm. Plaintiff established the monies in the Gauss account belong to her and the trial court's conclusion is supported by sufficient, credible evidence in the record.

I.

This matter comes before us for a second time. See Devers v. Devers, 471 N.J. Super. 466 (App. Div. 2022). Plaintiff and defendant were married in 1986. During their marriage, defendant founded and managed a hedge fund called

Palladin Group, LP (Palladin). Palladin included several investment funds, including the one relevant to this appeal, the Halifax Fund, a Cayman Islands limited partnership, which, in turn, included two feeder funds: Palladin Halifax Partners, LP, located in the United States, and Palladin Halifax Overseas Fund, Ltd, located in the Cayman Islands. Another individual, Maurice Hryshko served as general counsel for Palladin, as well as its several investment funds.

Palladin began winding down in 2003 due to several large investors deciding to redeem their funds. Defendant was involved in the wind-down process, which required the liquidation and distribution of approximately $750,000,000. As part of Palladin's wind down, investments held by each of the hedge funds were sold, with the proceeds subsequently distributed to investors. Once a fund's respective assets were sold and its proceeds distributed, the fund was terminated.

In the case of Palladin and its several investment funds, the wind-down process was prolonged due to several companies the fund had invested in going bankrupt. This extended the wind down until October 2008, when bankruptcy proceedings concluded. At that time, most of the monies held by the hedge funds were returned to investors. Around the conclusion of the bankruptcy proceedings and pursuant to Cayman law, defendant and Hryshko published

3

required notices for creditors and debtors and retained a liquidator to oversee the final termination of Palladin and its several funds. The notices –dated October 31, 2008, and placed in the November 11, 2008 edition of the Cayman Islands Gazette – stated the hedge funds were wound up and a liquidator was appointed for each.

The liquidator was required to hold unclaimed funds in trust for a maximum of one year, with any remaining unclaimed funds after that period escheating to the Cayman government. Defendant subsequently filed an affidavit, prepared by the liquidator, averring "the fund has no participating shareholders since 30 September 2008 and that all participating Shareholders were properly and completely redeemed out of the fund"; and Palladin Halifax Overseas Fund ceased operations, "surrendered its Certification of Registration," and "applied to the Registrar of Companies to be struck off the register . . . ." Defendant also submitted an audited financial statement reflecting a zero balance so the Cayman Islands Registrar could remove the company from the country's register.

Despite this affidavit, defendant claims the Gauss monies, approximately $1,500,000 remaining from the Halifax Overseas Fund, belong to investors who could not be located. Defendant transferred these remaining monies to a new

4

entity he created, Gauss, via two assignment and assumption agreements.  One of the assignment agreements was between Gauss and a separate Palladin fund called the Palladin Overseas Fund to hold approximately $23,000 for Progressive Equity, Ltd.  The second assignment was between Gauss and the Halifax Overseas Fund for the approximately $1,500,000 at issue in this appeal.

Rather than opening a trust account, however, defendant and Hryshko placed the Gauss monies in a checking account.  The only persons who could withdraw money from the account were defendant and Hryshko.

Plaintiff filed for divorce in January 2009.  After extensive litigation, the parties proceeded to a thirty-four-day trial that spanned three calendar years before entering their MSA in May 2017.  Relevant to this appeal, paragraph eight of the MSA states:  "The issue regarding the Gauss . . . monies shall be submitted to the New Jersey Superior Court for determination as to whether the funds shall be released to [plaintiff].  Whatever final determination is made as to the amount of money available shall belong solely to [plaintiff]."  The court subsequently entered a Dual Judgment of Divorce on June 12, 2017, incorporating the parties' MSA.

In early 2018, plaintiff filed a motion seeking (1) a finding "that Gauss . . . is a marital asset subject to equitable distribution"; and (2) an order releasing

5

the Gauss monies to her as part of the MSA. The trial court conducted a three-day plenary hearing to determine whether any of the money held by Gauss was investor money, as opposed to marital property. Defendant produced Hryshko and a CPA as fact witnesses, as well as an "expert on the wind down of a hedge fund" to testify as to the legal issues involved with the dissolution of hedge funds. Defendant's CPA testified only as to fees allegedly incurred in connection with managing and auditing Palladin and its several funds.

At the hearing, Hryshko testified only one alleged investor was found in the three years since the end of the various bankruptcy proceedings: Gerber Taylor, an entity that, in 2011, claimed to be owed approximately $98,000 of the Gauss monies. This outstanding balance, however, is contradicted by a financial statement dated July 31, 2002, which states the closing account balance for Gerber Taylor was zero dollars.

According to Hryshko, the $98,000 were proceeds from the bankruptcy proceedings, although no documents were produced to corroborate this assertion. Hryshko testified defendant told him the money could not be distributed because the March 16, 2011 order restrained defendant from withdrawing the Gauss monies, even though the court order post-dated Hryshko's email to Gerber Taylor. The record does not reveal any efforts made

6

by Gerber Taylor to obtain the $98,000 since 2011. The record also shows, despite Hryshko's testimony that Gerber Taylor could not be located because it changed its address, no address change occurred.

After our remand,[1] the trial court permitted both parties to argue whether the case was ripe for determination, or whether further evidence should be adduced. Each sought a final determination from the court, claiming the evidence supported their respective position. On January 26, 2023, the court held defendant failed to satisfy his burden of proof that the Gauss monies were exempt from the marital estate (the Initial Order). It ordered "the entirety of the Gauss [monies] be disbursed to . . . [p]laintiff without deduction, pursuant to the MSA." Five days later, the court amended its order to require Regal Bank to "immediately turn over the entirety of the proceeds, in the amount of $1,499,513.12 from the Gauss, LLC account" to plaintiff, to be held in her attorney's trust account (the Amended Order). On February 1, 2023, defendant filed an Order to Show Cause, seeking a stay of both the Initial and Amended Orders. Nevertheless, the Gauss monies were wired to plaintiff's attorney the

---

[1] We omit the trial court's initial decision that it lacked subject matter jurisdiction, the subsequent appeal, and our reversal and remand where we held the Investment Advisors Act, 15 U.S.C. §§ 80b-1 to -21, did not deprive the trial court of subject matter jurisdiction. Devers, 471 N.J. Super. at 475-76.

same day, with Gauss subsequently filing for Chapter 7 bankruptcy later that day. The court stayed the Order to Show Cause on February 2, 2023.

This second appeal followed.

## II.

On appeal, we defer to a trial court's factual findings if they are supported by sufficient credible evidence in the record. Primmer v. Harrison, 472 N.J. Super. 173, 186 (App. Div. 2022) (quoting Moynihan v. Lynch, 250 N.J. 60, 90 (2022)). This deference is particularly appropriate in the Family Part, "where the court brings to bear its special expertise" on family matters. Ibid. (quoting Moynihan, 250 N.J. at 90). Issues of law and the court's interpretation of the relevant legal principles, however, are subject to plenary review. Ibid. (quoting Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016)).

"An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Quinn v. Quinn, 225 N.J. 34, 45 (2016). "Although the Family Part is afforded greater discretion when interpreting marital settlement agreements, it is nevertheless bound to the parties' intent and should enforce the agreement as written." Id. at 46 (first quoting Pacifico v. Pacifico, 190 N.J. 258, 266 (2007); then quoting Tessmar v.

Grosner, 23 N.J. 193, 201 (1953); then quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)).  Nor will it modify a marital settlement agreement to "make a better agreement than the parties themselves made."  Holtham v. Lucas, 460 N.J. Super. 308, 320 (App. Div. 2019).

Pursuant to the MSA, plaintiff and defendant agreed "[t]he issue regarding the [Gauss monies] shall be submitted to the New Jersey Superior Court for determination as to whether the funds shall be released to [plaintiff].  Whatever final determination is made as to the amount of money available shall belong solely to [plaintiff]."  By these terms, the parties had already agreed if the monies did not belong to the specific investors, the Gauss monies were a marital asset subject to their equitable distribution agreement.  The issue before the court on remand was whether any of the funds belonged to investors, not whether the Gauss monies were subject to equitable distribution.  Defendant's argument before the family court was that the money did not belong to him, and certain financial regulations required him to hold the Gauss monies in perpetuity until the "missing" investors could be located.

The parties' intent is further reflected in defendant's counsel's statements at the hearing.  Defendant's counsel repeatedly confirmed to the family court the issue before it was "whether or not to release the funds to [plaintiff].  [I]t is

9

whether or not there's any money in the fund to be released that don't belong to someone else. Not . . . whether or not [the Gauss monies are] subject to equitable distribution."

Plaintiff, as the movant seeking to enforce the MSA, bore the burden of proving all the Gauss monies did not belong to lost investors and were thus available for distribution to her. Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 74 (1954); cf. Cardali v. Cardali, 255 N.J. 85, 112 (2023). Defendant chose not to testify but instead relied upon his previous submissions to the court. Plaintiff met her burden. As the record amply demonstrates, the Gauss monies did not belong to any investors. In the fall of 2008, toward the end of the wind-up process for the Cayman hedge funds, defendant transferred approximately $1.5 million to Gauss, the LLC of which defendant is the sole member. The Gauss monies were placed in a checking account only defendant could access, not a trust account. Around this time, defendant filed an affidavit, prepared by the Cayman liquidator of Palladin, averring that "the fund has no participating shareholders since 30 September 2008 and that all participating Shareholders were properly and completely redeemed out of the fund"; and Palladin ceased operations, "surrendered its Certification of Registration," and "applied to the Registrar of Companies to be struck off the register . . . ."

10

In the thirteen years since the family court enjoined the Gauss monies, no individual or entity has filed a claim against defendant or Gauss for the return of their investment money. In fact, anyone seeking to do so would find it difficult to trace the Palladin monies to Gauss' checking account, given the prior numerous representations made by defendant regarding Palladin. Defendant's claims these phantom investors may come forward someday are contradicted by the record at the hearing, where he presented no evidence to support that claim. We agree with the family court that plaintiff presented credible, unrebutted evidence the Gauss monies must be distributed to her in accordance with the MSA.

Defendant's remaining arguments do not merit further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11